UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| MITRA DAS, | ) |
|       **Plaintiff,** | ) |
| | ) |
|   **v.** | ) |
| | )   **Civil Action No.:** |
| UNIVERSITY OF MASSACHUSETTS, | ) |
| LOWELL, | ) |
| AHMED ABDELAL, and | ) |
| LUIS FALCÓN, | ) |
|       **Defendants.** | ) |
| | ) |

---

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

The Plaintiff, Mitra Das (" Professor Das"), is a seventy-two year old woman who has spent more than forty years as a sociology professor at the University of Massachusetts, Lowell ("UML"), the Defendant. She started her distinguished career at UML in 1972, receiving tenure in 1977, and becoming a Full Professor, the highest level of professor at UML, in 1986. A founding member of the Sociology Department, she continues to be active in designing the department's growth and direction, as well as by developing new scholarship and actively publishing in her areas of interest. She has written numerous books and research papers, including a book that is currently in progress. She has received several awards for teaching excellence and has designed, or participated in the design, of many new courses.

In addition to her active publication and teaching, she has a substantial university service record: she has participated in five faculty search committees and eight personnel committees, spent eight years as the Sociology representative to the faculty senate, and served on numerous committees and groups to promote diversity at UML. She has chaired the sociology department

three times over the course of her career, most recently from 2011 through 2014 when the former

Dean of UML's College of Fine Arts, Humanities & Social Sciences ("FAHSS"), Nina Coppen,

requested that she assume leadership of the Sociology department.

The first stumbling block to this otherwise productive and fulfilling career occurred when

the Defendant, Luis Falcon ("Falcon"), who is substantially younger than Professor Das, became

dean in 2012.  After becoming dean, Falcon began circumventing Professor Das and

undermining her while at the same time, favoring Professor Das' younger colleagues,

particularly Mignon Duffy ("Duffy").  In particular, Falcon refused to allow Das to hire

additional faculty, although they were badly required in the Sociology Department and

recommended by an Academic Quality and Assessment Development ("AQAD") report in 2012.

In December, 2013, Falcon summoned Das to a private meeting, reproached her for poor

leadership, accused her of ignoring the recommendations of the AQAD report, and blamed her

for delays in hiring faculty—delays that *he* had caused. He demanded she step down as chair at

the end of her term and threatened not to approve if she sought another term.  Falcon made his

threat to force Professor Das from the chair of the Sociology Department.  Without his approval,

seeking another term would be futile.  She could not be the chair without his approval. Under

this pressure, Das stepped down and did not seek another term as chair.   With Professor Das out

of the way, Professor Duffy, Professor Das' substantially younger colleague, sought to be chair

and was approved by Falcon.  After Professor Duffy became chair, Falcon authorized the hire of

new professors that he had denied Professor Das.

Professor Das complained about Falcon's actions to him and to the Provost, the

Defendant Ahmed Abdelal ("Abdelal").  Neither responded to her complaint.  Instead, UML

referred her to the Office of Equal Opportunity and Outreach that did not address Professor Das' complaint.

Falcon has taken adverse actions against older faculty generally, giving them smaller financial awards for meritorious performance. After Falcon assumed the leadership of the FAHSS, many of the department chairs, who were older, were replaced by younger professors.

Since Professor Duffy assumed the chair of the Sociology Department, the discrimination against Professor Das has continued, and Professor Das has suffered retaliation.

Professor Das brings this complaint against the Defendants for age discrimination and retaliation in violation of state and federal law. She brings this action against Falcon and Abdelal for age discrimination in violation of M.G.L. c. 151B, for interference with her right to be free from discrimination, and for aiding and abetting in discrimination. She seeks compensation for all her lost wages, future lost wages, benefits, emotional distress, and attorneys' fees and costs.

## PARTIES

1.     The Plaintiff, Mitra Das, resides at 104 Blueberry Hill Lane, North Andover, Massachusetts. Professor Das is a seventy-two year old woman.  At all times relevant to this complaint, Das worked for UML and was an employee as defined by M.G.L. c. 151B and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA").

2.     The Defendant, the University of Massachusetts, Lowell, is an educational institution duly formed under the laws of Massachusetts with its principle place of business at One University Avenue, Lowell, Massachusetts. At all relevant times to this complaint, UML was an employer as defined under M.G.L. c. 151B and the ADEA, and had control over the terms and conditions of Professor Das' employment.

3.      The Defendant, Ahmed Abdelal is an individual residing at 37 Lynn Shore Drive, Lynn, Massachusetts.  At all times relevant to this complaint, he was the university Provost, Professor Das' employer as defined under M.G.L. c. 151B and the ADEA, and had control over the terms and conditions of Professor Das' employment.

4.      The Defendant, Luis Falcon is an individual residing in Westford, Massachusetts. At all times relevant to this complaint, he was the Dean of College of Fine Arts, Humanities & Social Sciences ("FAHSS"), Professor Das' employer as defined under M.G.L. c. 151B and ADEA, and had control over the terms and conditions of her employment.

## FACTS

5.      Professor Das began her career at UML's Sociology Department in 1972.  She became a tenured member of the faculty in 1977 and was promoted to the position of Full Professor (the highest rank for a professor) in 1986.  Professor Das teaches courses in the fields of Family Studies, Ethnic Studies, Social Movements and Social Change. Most recently, she developed and taught a new course, Sociology of Food.

6.      Charles Caroll, Interim Dean of Fine Arts, Humanities, and Social Sciences, recognized her as a founding member of the Sociology Department at UML during a 2003 multi-year review of her performance.

7.      Das has taught a wide variety of course including, seminars and honors courses. The courses include:  Ethnicity in Massachusetts; Industrial Lowell: Growth, Decline, and Rebirth; Ethnic Communities; Social Anthropology; Sociology of Family; Sociology of Family Law; Social Movements; Sociology of Nonviolence; Study of Minorities; Technology and Human Values; and Women in Society.

8.      Interim Dean Carroll also recognized her efforts to engage students in interactive learning, her participation in interdisciplinary team teaching, her involvement in distance learning, her continued development new courses, and her use of new technologies and innovative methods of presentation.

9.      During her career, Das has written, or co-authored, four books and several book chapters, reviews, and articles and presented papers at forty-one conferences in her areas of interest.

10.      She has participated in five faculty search committees and eight personnel committees, spent eight years as the Sociology representative to the faculty senate, and served on numerous committees and groups to promote diversity at UML.

11.      Das is a member of the faculty union, the Massachusetts Society of Professors ("MSP") at the University of Massachusetts Lowell, a unit of the Massachusetts Teachers Association.

12.      At the times relevant to this complaint, the MSP and UML were signatories to a collective bargaining agreement ("CBA").  UML was obligated to abide by the terms of the CBA with respect to its faculty, including Professor Das.

13.      As required by the CBA, Professor Das was eligible for a Teaching Excellence Award each year.  The criteria for the award are set by each academic department and must include student evaluations.  Das received teaching excellence awards in 1997, 2002, and 2005.

14.      Professor Das chaired the Department of Sociology three times over the course of her career at UML:  from 1987-1993, in 2004 (in an acting capacity), and from 2011-2014.

15.      Terms for a department chair are three years in length.

16.     Peter Blewitt, the Acting Dean of the College of Liberal Arts and Sciences, evaluated her performance as the Sociology Department chair for the 1987-1988 academic term.

17.     Acting Dean Blewitt evaluated Professor Das as having an "administrative style" that "emphasizes promptness, efficiency and most especially carefulness." He also found her leadership as superior to her predecessors.

18.     During Professor Das' first term as chair, student enrollment tripled.

19.     In 2004, Professor Das was appointed the Acting Chair of the Sociology Department. She held the position from January to August of 2004.

20.     In June, 2004, John Wooding and Kristin Esterberg, the Provost and Associate Provost, praised the effort and commitment she had exercised while assuming the role of Acting Chair during a difficult year.

21.     In 2011, with the current chair experiencing extenuating circumstances, Dean Nina Coppen invited Professor Das to assume the role of Sociology Department chair a third time. Professor Das agreed, but because her family responsibilities required her to travel internationally during the summers for the next three years, she requested to share the position with another faculty member, Levon Chorbajian ("Chorbajian").

22.     Provost Abdelal granted her request, and the two took responsibility for the department. Professor Das took responsibility during the academic year and Chorbajian took responsibility during the summer months.

23.     In 2011, a faculty member who assumed the chair of a department six to ten faculty received approximately $11,000 per year, in addition to the regular salary, for the three-year term as department chair.

24.    This chair's stipend positively affects the faculty member's retirement benefit calculation:  if the period of time as chair is within the last three years of a professor's employment, the professor's retirement benefit is calculated using the salary plus additional amount.

25.    Professor Das did not receive the addition to her salary during the summer of 2011 when Professor Chorbajian had responsibility for the department, although she did perform some of the duties of the chair when she was in Massachusetts.

26.    In 2011, the tenured or tenure track professors in the Sociology Department were in two groups on the age spectrum.  One group was made up of professors whose ages ranged from late thirties to late forties.  Another group, some of them more senior professors, was ten to twenty years older, and most of this group were in their sixties.

27.    Professors Das, Chorbajian, Charlotte Ryan, and Paula Rayman were in the group in their sixties in 2011.

28.    Professors Mignon Duffy, Jordan Camp, Adrian Cruz, Cheryl Najarian Souza, were in their 40s, and Professor Daniel Egan was in his 50s.

29.    The Sociology Department had been struggling under the previous chair.  One of the reasons the Sociology Department had been struggling was the lack of full time, tenure track faculty.

30.    When she became chair, Professor Das took steps to rectify the situation, specifically hiring two adjunct faculty members as visiting lecturers.  Hiring them as lectures made them UML employees who would have a specific focus on teaching.  They began teaching in the fall of 2012.

31.    Because they were not tenure track, they did not have research and publication requirements.  The department still needed full time, tenure track faculty.

32.    One of the adjunct professors who Professor Das hired as a lecturer, Susan Thompson, has a specialty in service learning.  Service learning is an important emphasis at UML and is part of the UML mission, making the hire of professors with that background particularly important to the Sociology Department.

33.    Also after becoming chair, Professor Das also developed a new course in food studies, Sociology of Food. Professor Charlotte Ryan, another older faculty member, developed a course on food and the environment. These courses were popular with students who enroll in them at a high rate.  The Sociology department is still offering these courses.

34.    In addition to developing, and encouraging Professor Ryan to develop, the food studies courses, Professor Das supported Professor Cruz in his development of a new course on Sociology of Immigration.  The course was approved and is still being offered.

35.    Finally, Professor Das encouraged the restoration of a course in Internships to give students field experience and skills that could lead to work opportunities.  The Internships course was introduced in the fall of 2013 and was offered again in Fall 2014.

36.    During the 2011-2012 academic year, Professor Das, with Professor Chorbajian, began to design a Law & Society program in conjunction with the Legal Studies department. Professor Chorbajian worked with the Director of the Legal Studies department, Michael Jones, to develop a proposal.  The development of this program continued into the 2012-2013 academic year.

37. During the 2011-2012 academic year, Professor Das also contributed to the Peace and Conflict Studies Program. Students commented positively on Professor Das' work during this period,

38. She also wrote an article for an edited collection of essays, co-authored another article, had a book manuscript in progress, and presented at several conferences.

39. In February, 2012, Professor Das took steps to resolve the lack of full time, tenure track faculty. She sought permission from the Provost, Abdelal, to hire four new sociology professors. He agreed to allow two new hires, one tenure track and one non-tenure track.

40. In May, 2012, Professor Das submitted position descriptions for the two new hires to the Provost's office.

41. In May, 2012, Provost Abdelal recognized Professor Das' work building Sociology Department programs and expressed his strong support for it.

42. Provost Abdelal officially approved hiring for two new positions in Sociology in June, 2012. Because Abdelal approved these hires in June, they would not be available for teaching during the 2012-2013 academic year.

43. The CBA requires a written evaluation of each department chairperson annually. The written evaluation is to be based on "the standard credentials, evaluation areas, and their knowledge of the educational leadership of the Chairperson and his/her fulfillment of the duties specified in this Agreement".

44. The purpose of the requirement for evaluation is to give the chair notice of areas in which she or he can improve and the opportunity to make these improvements.

45. In May, 2012, as required by the CBA, Acting Dean Julie Nash ("Acting Dean Nash") reviewed Professor Das' work as the chair of the Sociology Department and her work as

a professor and issued a written evaluation of Professor Das' administrative duties, service, research, and teaching.

46.     Acting Dean Nash evaluated Professor Das as "an effective advocate for advancing her program" who had "taken a leadership role in recruitment and outreach, and *as a result, has increased the number of Sociology majors by one-third*."  [emphasis added]  She also noted Professor Das "led her faculty in developing a strategic vision for the program" and called her an "effective leader."

47.     Based on Professor Das' service, research, and teaching, Acting Dean Nash found Professor Das' work worthy of a merit award and awarded her the maximum Dean's Merit Award possible.

48.     Falcon became Dean of FAHSS in approximately July, 2012.  Falcon is substantially younger than Professor Das.

49.     In September, 2012, Falcon required that requests for new faculty hires be presented to him, even those that had been previously approved by the Provost.  As a result, Professor Das had to resubmit the posting and the position descriptions for the two new hires to Falcon for re-approval. The resubmission to Falcon caused a delay in the hiring process for the two new professors.

50.     The original application deadline was October 15, 2012.  After Falcon's delays, the deadline for the submission of applications for the two new positions had to be extended. Offers to the two new professors were made at the end of the spring 2013 semester. Because the semester schedule has to be set one semester ahead of time, the two new hires started teaching for the 2013-2014 academic year.

10

51.    In September, 2012, the Sociology Department was evaluated through UML's Academic Quality Assessment and Development ("AQAD") program.

52.    AQAD is a component of UML's Performance Measurement System. Its primary purpose is to assess and improve the core academic functions of teaching and learning, research/professional/creative activity, and public service/academic outreach through an ongoing system of quality control/program assessment.

53.     The reviewers wrote a report based on meetings with Professor Das as the chair, each faculty member, and two adjunct faculty members; a visit to an undergraduate class; a meeting with undergraduate sociology majors; and meetings with Dr. Charlotte Mandel, Vice Provost, and Deans Falcon and Nash.

54.    The AQAD report commended the Sociology department for the active scholarship of the faculty, the faculty's dedication to its students, the improvement of the physical resources, and the expansion of the number of faculty.  Particularly, the report commended the hire of the lectures by Professor Das.

55.    The report recommended several strategies for increasing the number of majors, particularly relying less on adjunct faculty to teach introductory courses and restructuring some of the course offerings.  It also recommended that the administration allow Sociology to make a senior hire to assist in succession planning.

56.    The reviewers noted that many of their recommendations required the hire of more new faculty.

57.    Professor Das and the Sociology Department took steps over the course of the 2012-2013 academic year to address the recommendations of the AQAD report, including continuing to develop a joint program with the Legal Studies department, developing new

courses to offer as introductory courses, revising the website to make it more attractive, and seeking an additional two new hires (in addition to the two already authorized).

58. After Falcon's hire, he began circumventing Professor Das and making decisions that normally would have been left to the chair or that normally would have meant the chair was involved. Falcon began to circumvent Professor Das because of her age.

59. For example, Falcon sent a letter of reprimand to Professor Ryan, an older faculty member, without involving Professor Das in the discipline. It is the responsibility of the chair of the department to manage the faculty and determine when discipline is required. Deliberate circumvention of the chair undermines her authority.

60. Falcon sought to undermine Professor Das' authority with Professor Ryan because of her age.

61. Falcon also began to meddle in the development of the junior faculty. A junior, and younger, professor, Adrian Cruz was struggling to meet the criteria for tenure. Professor Das had been assisting him. Through her mentorship, she had encouraged him, and he had agreed, to take a pre-tenure sabbatical to work on his publications.

62. A pre-tenure sabbatical has to be approved by the dean. To assist Professor Cruz, and to set him up to be able to successfully apply for tenure, Professor Das negotiated with Falcon to allow the pre-tenure sabbatical. After their negotiation, Falcon agreed to the pre-tenure sabbatical.

63. However, after agreeing to the sabbatical, Falcon unilaterally appointed Cruz to a committee that required a significant time commitment and could detract from Professor Cruz' ability to publish. Falcon did not tell Professor Das until Cruz was already appointed to the committee.

12

64.     It is the responsibility of the chair of the department to mentor and guide the tenure preparation of the faculty in her department.  Deliberate circumvention of the chair with respect to the development of junior faculty undermines her authority.

65.     Falcon sought to undermine Professor Das' authority with Professor Cruz because of her age.

66.     If Falcon did include Sociology Department faculty in his decisions, he included the faculty in the younger group, such as Professor Duffy.  His inclusion of younger faculty, when he should have included Professor Das as the chair, shows that Falcon favored younger employees.

67.     On September 9, 2013, despite the recommendation of the AQAD report, Falcon refused to authorize the hire of additional professors for Sociology.  Without the additional faculty, Professor Das had no choice but to continue to rely on the adjunct faculty to teach Introductory Sociology courses.

68.     Falcon denied the new hires because Professor Das, an older woman, was chair.

69.     According to the CBA, the dean was required to evaluate the chairs for the 2012-2013 academic year by June 10, 2013 based upon the criteria set forth in the CBA:  the standard credentials, evaluation areas, or Falcon's knowledge of the chair's performance of her duties.

70.     Despite this requirement, Falcon never provided Professor Das with a written evaluation of her work during the 2012-2013 academic year that was.

71.     Falcon summoned Professor Das to a meeting on December 3, 2013.  During this meeting he raised four complaints about her leadership:  she had ignored the recommendations of the AQAD report; she had drafted the department response to the AQAD report alone, without

the required input of the rest of the faculty; she delayed the hiring process of the two approved hires; and she lacked leadership skills.

72.     Each of Falcon's claims about Professor Dais's performance as the chair is false and a pretext for age discrimination.

73.     Falcon demanded that she step down as chair when her term ended by telling her he would not approve her if she sought another term as chair.

74.      In her forty years at UML, Professor Das had never seen a professor become the chair of a department without the dean's approval.  Without Falcon's approval, seeking another term as chair would be futile.

75.     His demand that she step down and his threat not to approve her were based on the complaints he raised about her performance during the meeting.  However, Falcon's complaints that Professor Das step down as chair was false and a pretext for age discrimination. He forced her to step down as the chair of the Sociology department because of her age.

76.     Far from ignoring the AQAD report, Professor Das had undertaken steps to address the issues it outlined.  The AQAD report recommended increasing the gateway courses for students.  Professor Das and other Sociology professors developed new "gateway" courses in response:  Social Problems, Foundations of Social Analysis, and Fast Food Hot Planet.

77.     The AQAD report recommended more courses to prepare students for service learning. Professor Das allowed the professors to change the position and level of some of the service learning courses and sought new hires with a service learning interest.

78.     The AQAD report recommended the hire of more professors, including a senior professor.  Professor Das had sought, on multiple occasions, permission from Falcon to more

professors in addition to the two Abdelal had authorized.  Falcon denied her permission to hire any additional faculty.

79.     Falcon's claims that she ignored the AQAD report thus were false and a pretext for age discrimination.

80.     Falcon's claim that Professor Das wrote the response to the AQAD report without input from all the other in the department is also false.  Professor Das sought both Professor Duffy and Professor Chorbajian's input and incorporated into the response.  Professor Das also held a faculty meeting to get input from the entire department.  The input she received was incorporated into the response to the report.

81.     Falcon's claims that Professor Das wrote the response to the AQAD report without input from all the other in the department thus were a pretext for age discrimination.

82.     Falcon's claim that Professor Das delayed the hiring process for the two approved new professors is false.  Falcon delayed the process by insisting on reapproving and reviewing the requests for new hires that Abdelal had granted.  In addition to the delays Falcon caused, UML's Human Resources department required members of the search committee to receive training before starting the search process.

83.     Blaming Professor Das for the delays in the hiring process of the two approved new positions and using this claim as a reason to reject her as the chair thus is a pretext for age discrimination.

84.     Falcon's claim that Professor Das lacks leadership skills is false.  Previous deans, including Acting Dean Nash months before Falcon came to UML, recognized that Professor had good leadership skills and did well as the chair.

15

85.     Thus, Falcon's claim that Professor Das lacks leadership skills was a pretext for age discrimination.

86.     Falcon's violation of the CBA by failing to evaluate Professor Das as required deliberately deprived her of the opportunity to improve her performance.  Falcon deliberately deprived her of that opportunity so that he could build a false case to withhold his support of her as chair of the Sociology Department.

87.     Falcon's false claims about Professor Das' performance as chair, depriving Professor Das with an evaluation as required by the CBA, and his reliance on the false claims about her performance to force her to step down as chair are pretexts.  Falcon forced Professor Das from being chair for another term because of her age.

88.     Through Falcon, its agent, UML discriminated against Professor Das because of her age.

89.     Falcon's decision to force Professor Das to give up her position as chairperson because of her age is an individual and distinct act of age discrimination that underlies UML's discrimination against Professor Das.  Falcon therefore aided and abetted UML's discrimination against Professor Das.

90.     Falcon's actions also interfered with Professor Das' right to work in an environment free from discrimination.

91.     After her meeting with Falcon in December 2013, Professor Das submitted a written complaint about Falcon's actions to Falcon and to Provost Abdelal.  Neither Falcon nor Abdelal responded to her complaint.

92.     By failing to respond to Professor Das' protest, Abdelal approved and authorized Falcon's discriminatory treatment of Professor Das.

93. By approving and authorizing Falcon's discriminatory treatment of Das, Abdelal engaged individual and distinct acts of age discrimination that underlie UML's discrimination against Das. Abdelal therefore aided and abetted UML's discriminatory treatment of Professor Das.

94. Abdelal's approval and authorization of Falcon's discrimination also interfered with Professor Das' right to work in an environment free from discrimination.

95. After Professor Das was forced to step down at the end of her term, Professor Duffy, Professor Das' younger colleague, sought to be chair and was approved by Falcon.

96. In approximately, February, 2014, UML began an internal investigation in response to Professor Das' complaint about Falcon's actions. This investigation was not in good faith, and UML took no action to rectify the discrimination by Falcon and Abdelal.

97. By allowing the discrimination against Professor Das to go unaddressed, UML failed to investigate and remedy discrimination that it knew, or had reason to know, was taking place in its workplace.

98. Professor Das filed a charge with the Massachusetts Commission Against Discrimination on September 24, 2014. UML, Falcon, and Abdelal's response to her charge demonstrates that forcing her to step down as the chair is a pretext for age discrimination.

99. In response to Professor Das' charge, UML, Falcon, and Abdelal changed their reasons for forcing Professor Das from the chair, adding new false claims about Professor Das' performance that Falcon did not address with her during the December 3, 2013 meeting.

100. UML, Falcon, and Abdelal represented to the Commission Against Discrimination that Professor Das refused to address the poor performance of a younger

17

professor, Professor Cruz, refused to develop a joint program with the Legal Studies department, and had too many adjunct faculty teaching during the fall 2013 semester.

101.   The failure to address any of these matters with Professor Das during the December 3, 2013 meeting demonstrates that the additional complaints are more pretexts for age discrimination.

102.   Falcon, Abdelal, and UML claimed that several emails Falcon sent to and oral conversations he had with Professor Das were evaluations of her performance as the chair and fulfill the requirements of the CBA.

103.   Neither the emails nor the oral conversations fulfill the requirements of the CBA. The oral conversations are not written.  The emails do not evaluate Professor Das against the standard credentials, evaluation areas, or Falcon's knowledge of her performance of her duties as required by the CBA.

104.   Therefore, Das did not receive a performance evaluation for her performance from 2012-2013 as required by the CBA, and she was deprived of the ability to improve her performance.  The claim that she did have an opportunity to improve and did not is false and a pretext for age discrimination.

105.   Falcon's blaming Professor Das for relying too much on adjuncts to teach during the fall 2013 semester is false and a pretext for age discrimination.  Falcon had denied Professor Das additional hires, making it impossible for her to have any fewer adjuncts to teach Introduction to Sociology courses.  Thus, his claim that Professor Das had relied on too much on adjuncts to teach introductory courses for the fall 2013 schedule is false.

106.    Falcon authorized the hire of additional professors as soon as Professor Duffy became chair, demonstrating that his withholding approval for hiring from Professor Das was because of age discrimination.

107.    Furthermore, Professor Duffy has five of the eleven sections of Introduction to Sociology taught by adjuncts.  Falcon has not complained about her rate of adjunct staffing, making this critique of Professor Das obviously false.

108.    Falcon's failure to complain about Professor Duffy's number of adjuncts teaching shows favoring a younger employee and that his complaint about Professor Das' staffing of adjunct professors was a pretext and was based on age discrimination.

109.    The claim that Professor Das did not address the performance issues with Professor Cruz is also false.  The issue with Professor Cruz was his rate of publication.  He had a heavy course load, so Professor Das suggested that he apply for a pre-tenure sabbatical to work exclusively on his publications.  Professor Das met with Falcon to explain why she, and he, should support Professor Cruz' application for a pre-tenure sabbatical.

110.    The claim that Professor Das did not develop a program with the Legal Studies department is also false.  Professor Das had been working with Professor Chorbajian and the Legal Studies department since 2012 to develop a joint program.  The effort was ongoing at the time Falcon met with Professor Das in December, 2013.

111.    The age discrimination Professor Das has experienced in being forced from her leadership position is widespread at UML.

112.    At the start of the 2014-2015 academic year, Professor Das received an email from Associate Dean Nash welcoming new chairs to their positions.  A significant number of the new chairs are younger faculty who had replaced older professors as chairs.  The widespread

leadership replacement of older faculty by younger faculty demonstrates a pattern and practice of age discrimination at UML.

113. The pattern and practice of age discrimination has also occurred in the award of Dean's Merit monetary awards.

114. The CBA provides for the faculty to receive Dean's Merit monetary awards. The Dean "in his/her sole judgment shall award these funds to unit members …. in recognition of and/or to encourage outstanding achievement by unit members in teaching or service or research or any combination thereof during the evaluation period."

115. In December, 2013, Dean Falcon issued the faculty Dean's Merit raises. Falcon gave junior faculty, who are mostly younger, higher Dean's Merit raises than the senior faculty, who are mostly older. Falcon's favoring the younger professors with higher merit awards shows that he harbors an animus against older faculty, including Professor Das.

116. Senior faculty university-wide received lower Dean's Merit raises than junior faculty. In April, 2014, the faculty union filed a grievance against UML because of the senior faculty receiving lower Dean's Merit raises.

117. After the union's grievance, within the same month, UML increased the merit allocations to senior faculty. UML's increasing the merit allocations demonstrates that it knows or has reason to know that a pattern and practice of age discrimination is occurring at UML.

118. After UML, Falcon, and Abdelal had notice that Professor Das was complaining about age discrimination, they began to retaliate against her.

119. In keeping with this pattern of singling out older professors for less favorable treatment, the Dean's Merit award Professor Das received was lower than in previous years. There was no basis to lower Professor Das' Dean's Merit award from what it had been in

previous years.  Reducing her Dean's Merit award was based on age discrimination or retaliation.

120.    Professor Das appealed to Abdelal, as provided for in the CBA, based on an unfair assessment of her achievements during the relevant time period.  Abdelal denied her appeal, claiming she sought recognition for achievements outside the relevant time period.

121.    Das had not sought recognition for achievements outside the relevant time period.  Abdelal's claims about her seeking recognition for achievements outside the relevant time period is demonstrably false and is a pretext for age discrimination or retaliation.

122.    His denial of her appeal is a separate and distinct act of age discrimination and is aiding and abetting UML in age discrimination.  It is also retaliatory for Professor Das' complaint about Falcon forcing her to step down and interferes with Professor Das' right to a workplace free from discrimination.

123.    After Professor Duffy became chair, she continued the age discrimination and retaliated against Professor Das.

124.    Professor Duffy began to have Professor Das' expenditures monitored by the department secretary and Professor Das was later audited.  As there was no basis to have Professor Das monitored or audited, these actions were taken based on age discrimination and were retaliation for Professor Das' age discrimination complaint.

125.    Professor Duffy, the new younger chair, has not allowed Professor Das to teach honors section of an introductory course a course she wanted, although Professor Das has the seniority required by the CBA.

126.    Professor Duffy told Professor Das that she could not teach the course as an honors level course because of its level.  That explanation is false.  Courses at the level of the

21

one Professor Das sought to teach as an honors course are allowed to be taught as honors courses.

127.    Professor Duffy has allowed younger professors, including a brand new hire without seniority, to teach an honors section of an introductory course.

128.    Denying Professor Das the ability to teach the introductory course as an honors course is because of age discrimination or retaliation for protesting age discrimination.

129.    As a result of the discrimination outlined above, Das has suffered damages including, lost wages (particularly the salary addition for another three years as chair and its affect on her retirement), emotional distress, and other damages.

## EXHAUSTION OF REMEDIES

130.    Pursuant to the state and federal law requirements, on September 29, 2014, Das filed charges of discrimination at the Massachusetts Commission Against Discrimination and Equal Employment Opportunity Commission before filing this complaint.

131.    On May 13, 2014, Das filed a notice of Withdrawal at the Massachusetts Commission Against Discrimination with respect to her charge of discrimination.

## COUNT I
### (Violation of the ADEA, 29 U.S.C. § 623 *et seq.*)
### (as to the Defendant, UML)

The actions of UML as set forth above, and incorporated by reference here, constitute age discrimination in violation of the ADEA.

## COUNT II
### (Violation of M.G.L. c. 151B, § 4(1))
### (as to all Defendants)

The actions of the Defendants as set forth above, and incorporated by reference here, constitute age discrimination in violation of M.G.L. c. 151B § 4(1).

## COUNT III

22

**Violation of M.G.L. c. 151B, §4(5)**
**Aiding and abetting**
**(as to Defendants Falcon and Abdelal)**

As set forth above, and incorporated by reference here, Falcon's and Abdelal's actions

constitute aiding and abetting, in violation of M.G.L. c. 151B, §4(5).

**COUNT IV**
**Violation of M.G.L. c. 151B, §4(4A)**
**Interference**
**(as to Defendants Falcon and Abdelal)**

As set forth above, and incorporated by reference here, Falcon and Abdelal's actions

constitute interference with Das' right to be free of discrimination in her workplace, in violation

of M.G.L. c. 151B, §4(4A).

**COUNT V**
**Violation of M.G.L. c. 151B, §4(4)**
**Retaliation**
**(as to all Defendants)**

As set forth above, and incorporated by reference here, the actions of the Defendants

were retaliation in violation of M.G.L. c. 151B, §4(4).

**COUNT VI**
**Violation of ADEA, 29 U.S.C. § 623 (d)**
**Retaliation**
**(as to UML)**

As set forth above, and incorporated by reference here, the actions of UML were

retaliation in violation of 29 U.S.C. § 623 (d).

WHEREFORE, Professor Das requests that this Court order the following relief:

a) Order the Defendants to give her the title of Chair Emeritus of Sociology;

b) Order the Defendants to pay her the chair's stipend she lost by being forced

   from the position by Falcon;

    c) Order the Defendants to create a position of Sociology Liaison for Honors and to make Professor Das the Liaison;

    d) Order the Defendants to cease engaging in age discrimination, against Professor Das specifically and against all faculty;

    e) Order the Defendants to cease retaliating against Professor Das;

    f) Order the Defendants to pay Professor Das:

        1) Lost wages and benefits;

        2) Future lost wages and benefits;

        3) Emotional distress damages;

        4) Punitive damages;

        5) Doubling or tripling of damages as provided for by Massachusetts law;

        6) Attorneys' fees and costs as provided for by statute; and

        7) Any other relief to which Professor Das may be entitled.

## JURY DEMAND

Professor Das demands a trial by jury on all of her claims.

Respectfully submitted,
MITRA DAS,
By her attorney,

Dated: June 22, 2015

_____
Rebecca G. Pontikes, BBO # 637157
PONTIKES LAW, LLC
10 Tremont Street, 2nd Floor
Boston, MA 02108
(617) 357-1888
rpontikes@pontikeslawllc.com

24